# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1085V

| | |
|---|---|
| CAITLIN M. DOYLE, | TO BE PUBLISHED |
| Petitioner, | Special Master Katherine E. Oler |
| v. | Filed: September 1, 2021 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Attorneys' Fees & Costs; Reasonable Basis |
| Respondent | |

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.
*Debra A. Filteau Begley*, U.S. Department of Justice, Washington, D.C., for Respondent.

## DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

On July 25, 2018, Caitlin M. Doyle ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program,[2] alleging that she suffered from "arthritis and neurological injuries" from the influenza ("flu") vaccine she received on October 10, 2016. Pet., ECF No. 1.

On September 14, 2020, Petitioner filed a motion for final attorneys' fees and costs, requesting $16,979.50 in attorneys' fees and $4,828.74 in attorney' costs. Final Fees App. at 2,

---

[1] This Decision will be posted on the Court of Federal Claims' website. **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). If, upon review, I agree that the identified materials fit within this definition, I will redact such material from public access. Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

1

ECF No. 40.

For the reasons discussed below, I hereby **GRANT IN PART** Petitioner's application for final fees and costs and award a total of **$20,959.26** in final attorneys' fees and costs.

I. **Procedural History**

Petitioner filed her petition on July 25, 2018. ECF No. 1. Petitioner concurrently filed several medical records (Exs. 1-4) and an affidavit (Ex. 5) in support of her petition. ECF No. 1. Petitioner filed a statement of completion on August 30, 2018. ECF No. 7. She then filed additional medical records on September 5, 2018 (Ex. 6) and February 1, 2019 (Ex. 7). ECF Nos. 8, 11.

On June 12, 2019, Respondent filed his Rule 4(c) report, indicating Respondent "recommends that compensation in this case be denied" and that the case was "not appropriate for compensation under the terms of the Act." Resp.'s Rep. at 1, ECF No. 15. Respondent argued that (1) Petitioner "has not met her burden of establishing what conditions she allegedly developed as a result of the flu vaccine"; and (2), Petitioner had not provided medical records or an expert report that addressed both the issues of diagnosis and the *Althen* requirements. *Id.* at 9-10.

On September 12, 2019, Petitioner filed an expert report from Dr. Eric Gershwin.[3] Ex. 9, ECF No. 19. Petitioner filed Dr. Gershwin's CV and supporting references on September 23, 2019. Exs. 10A-10U, ECF No. 20.

I held a status conference on October 4, 2019 where I asked Petitioner's counsel to clarify Petitioner's current theory of the case.[4] ECF No. 21. I told counsel that I did not believe Dr. Gershwin's expert report adequately commented on this theory and directed Petitioner to file an expert report addressing a causation theory for reactive arthritis. *Id.* At this status conference, Respondent's counsel also added that Respondent believed that Petitioner had not established that her alleged injury met the six-month-severity requirement. *Id.*

Petitioner filed additional medical records on February 7, 2020 and February 18, 2020. Exs. 11-12, ECF Nos. 25-26.

On March 5, 2020, Petitioner filed a status report stating that she did "not intend on filing an amended expert report" and requesting thirty days to file a status report indicating how she wished to proceed. ECF No. 27.

On May 11, 2020, I held a second status conference. ECF No. 30. Petitioner's counsel stated that Petitioner was seeking advice from alternate counsel regarding her case. *Id.* at 1. I instructed Petitioner to file a status report within fourteen days indicating how she would like to proceed. *Id.* at 1.

---

[3] Dr. Gershwin's report is not a factor in my reasonable basis analysis, and therefore I have not summarized or analyzed it in this decision.

[4] Petitioner's counsel, Ms. Senerth indicated that Petitioner was alleging reactive arthritis caused by the flu vaccination. See Scheduling Order of Oct. 4, 2019 (ECF No. 21).

2

On July 29, 2020, Ms. Senerth filed a status report indicating that she had not yet heard from Petitioner regarding the continued prosecution of her case. ECF No. 33. This was Ms. Senerth's third status report indicating that she had not been able to reach her client. ECF Nos. 31, 32, 33. On the same day, I issued an order instructing Petitioner to file an affidavit confirming her intent to continue the prosecution of her case. ECF No. 34.

On August 24, 2020, Petitioner filed a motion to dismiss. In her motion, Petitioner stated that "she does not believe Petitioner will be able to successfully demonstrate causation" and that "in her opinion it would be unreasonable to proceed" with her claim. Petr.'s Mot., ECF No. 35. I granted Petitioner's motion on the same day. ECF No. 36.

Petitioner filed a Motion for Final Attorneys' Fees and Costs on September 14, 2020. Fees App., ECF No. 40. Respondent filed a response contesting reasonable basis on September 28, 2020. Fees Resp., ECF No. 42. Petitioner filed a reply on October 5, 2020. Fees Reply, ECF No. 43.

This matter is now ripe for adjudication.

## II.     Petitioner's Relevant Medical History

Petitioner was born on April 9, 1984. Ex. 2 at 1. Her medical history was significant for panic attacks, depression, asthma, seasonal allergies, anxiety, acne, flat feet, heel spur and "Bil TMJ." Ex. 11 at 25.

Petitioner had previously received influenza vaccinations on October 25, 2012, October 10, 2013, September 29, 2014, and October 3, 2015. Ex. 1 at 1.

On October 10, 2016, Petitioner received her allegedly causal influenza vaccination. Ex. 1 at 1.

On October 29, 2016, Petitioner was seen in the emergency room complaining of numbness in her "bilateral LE x 5 days ago."[5] Ex. 12 at 66. Petitioner also reported "heaviness" in her LE. *Id*. Petitioner stated that the sensation improved with walking. *Id*. Petitioner's examination was largely normal and she was discharged on the same date. *Id*.

On November 5, 2016, Petitioner presented to Dr. Phillip Liaw at Holland Medical Associates Bustleton for "leg stiffness, numbness, tingling and low back pain." Ex. 2 at 1. Dr. Liaw noted that Petitioner's symptoms had "been ongoing some time". *Id*. Petitioner's exam was noted to be "unremarkable." *Id*. Dr. Liaw ordered an X-ray of Petitioner's spine and a basic metabolic panel blood test. *Id*. Petitioner's X-ray returned normal results. *Id*. at 6.

On November 28, 2016, Petitioner visited Dr. David Chesner for "low back and joint pain with numbness and tingling 2 weeks following a flu vaccine." Ex. 3 at 19. Petitioner's medical

---

[5] Other records from this visit indicate that the numbness began approximately one week prior. Ex. 12 at 72.

history noted that Petitioner "started with low back pain and stiffness in the lower extremities 2 weeks following a flu shot (10/25) and started in the calves up into the low back. Waited one week, went to ED and was treated for low [potassium]. Went to the PCP and lab work was ordered." *Id.* Dr. Chesner noted that she had been to the emergency department and seen her primary care physician for the issue prior to being seen at this appointment. *Id.* Dr. Chesner's notes also state that he "discussed the probability that this is likely related to the vaccine and will treat conservatively at this time with Meloxicam." *Id.* Under plan details, Dr. Chesner wrote "pt s/p influenza vaccine – followed by symmetrical pain / stiffness hands/ wrists – feet and ankles – SI joints – likely reaction to flu vaccine or viral syndrome, post reactive arthritis – will manage with meloxicam 15mg one daily with gabapentin." *Id.* at 19-20.

On December 29, 2016, Petitioner visited Rheumatic Disease Associates for a "sudden" onset of musculoskeletal pain. Ex. 3 at 15. She was noted to have 18/18 tender points. Petitioner was diagnosed with fibromyalgia and acute musculoskeletal pain. *Id.*

On February 24, 2017, Petitioner was seen at Rheumatic Disease Associates for a follow up on her fibromyalgia syndrome. Petitioner presented with "fatigue, headache, lymphadenopathy, muscle spasms, muscle tenderness and muscle weakness." Ex. 3 at 10. Although the provider notes indicate that "risk factors exclude depression and arthritis," under "Assessment", Petitioner is noted to suffer from chronic inflammatory arthritis. Ex. 3 at 10-11.

On May 3, 2017, Petitioner visited Rheumatic Disease Associates for musculoskeletal pain. Ex. 3 at 6. The doctor's notes state that Petitioner's pain began "two weeks ago", or approximately April 19, 2017. *Id.* at 7. Petitioner's pain was located in the "bilateral shoulder and bilateral knee" and described as "aching, burning and dull." *Id.* at 7.

On the same day, Petitioner was seen by Dr. Dan Gzesh for "neuropathy in legs." Dr. Gzesh's notes indicate as follows:

> On October 23, 2017,[6] [Petitioner] lost feeling in both calves and experienced generalized weakness. Ex. 3 at 26. She notes that she had a flu shot 2 weeks previously. Symptoms persisted for about 4 months, then subsequently improved. During that time she felt 'burning' in the calves and biceps. Currently there is no numbness, burning or weakness of the extreme ties [sic] though she does report intermittent bilateral shoulder girdle pain. She has been treated by a rheumatologist, who diagnosed fibromyalgia vs. RA…. Currently, she is not treated with pharmacological intervention.

*Id.* Dr. Gzesh's assessment was "given the timing following flu shot exposure, as well as the gradual recovery, I am concerned that she had Guillain Barr syndrome. However, the hyperreflexia seen today does not support this theory. At this time, she is essentially asymptomatic." *Id.* at 27. Petitioner was instructed to contact Dr. Gezsh if there was any deterioration in her symptoms. *Id.*

---

[6] As October 17, 2017 was in the future at the time of this visit, I have assumed this is a mistake in the record and Dr. Gezsh meant October 17, 2016.

On June 5, 2017, Petitioner visited Dr. Mark Brown. Ex. 4 at 5. Dr. Brown noted Petitioner's symptoms as "leg numbness in both calves" followed by "aching joints." *Id.* Petitioner also developed burning sensations in her shoulders and "pain in the shoulder and biceps muscles." Dr. Brown's notes indicate that "these symptoms have subsided over the last few months, but there is still arm and shoulder pain. She now has mild tingling in her arms and her fingers feel stiff." *Id.* Dr. Brown's assessment was that "her history suggests an inflammatory process affecting nerves, muscles and/or joints that came on after a flu shot. These symptoms have largely subsided." *Id.* at 6. Dr. Brown's opinion was that Petitioner "had an inflammatory reaction after the immunization, but there are no signs of that now." Dr. Brown asked Petitioner to return for a follow-up visit in about 4 months. *Id.*

On July 29, 2017, Petitioner was seen by CRNP Denise Keegan at Holland Medical Associates Bustleton. Ex. 2 at 3. Petitioner's symptoms included "Paresthesias ongoing burning sensation since flu vaccine last year." *Id.* Petitioner was noted to have seen a rheumatologist and two neurologists. *Id.* Ms. Keegan's notes state that "neuro feels she may have had a mild case of guillian [sic]." *Id.*

On September 7, 2017, Petitioner visited Rheumatic Disease Associates for a follow up concerning her musculoskeletal pain. Ex. 3 at 2. Petitioner's onset of pain was noted to be "gradual," and characterized as "aching and dull." *Id.* She was also noted to have joint tenderness. Preliminary assessments included possible inflammatory arthritis (pending workup), possible thyroid dysfunction (pending workup) and chronic musculoskeletal pain. *Id.* Petitioner was ordered to "avoid live vaccines." *Id.*

On October 2, 2017, Petitioner was seen by Dr. Brown for a scheduled follow-up visit. Ex. 4 at 2. Petitioner explained that "sensory symptoms are still there but are less bothersome" and that she had recently had a symptom flare. *Id.* In the provider notes, Dr. Brown states that thirteen days after a "routine flu vaccine" on October 10, 2016, Petitioner

> felt numbness in both calves, followed by aching joints that seemed to be like 'mono'. She developed [b]urning sensations in her shoulders. There was pain in shoulder the biceps muscles. At her initial visit here on 6/5/17 these symptoms had largely subsided. There was still arm and shoulder pain. She reported mild tingling in her arms. He [sic] fingers felt stiff. There was no weakness. Bowel and bladder functions were normal.

*Id.* Dr. Brown's assessment was that Petitioner "developed a mild but bothersome sensory neuropathy after an influenza."[7] Dr. Brown further noted that "today her improving symptoms and the favorable neurologic examination indicate that the neuropathy is slowly resolving." *Id.* at 3. Dr. Brown told Petitioner to expect "additional but possibly incomplete recovery in the coming year." *Id.*

---

[7] Based on the context of Dr. Brown's notes, I believe Dr. Brown means the influenza vaccine Petitioner received on October 16, 2016, and not an influenza infection.

5

On December 18, 2018, Petitioner again visited Dr. Brown for a neuropathy follow-up. Ex. 7 at 1. Dr. Brown's notes indicate that Petitioner's neuropathic symptoms became evident about thirteen days after a routine flu vaccination. *Id.* Dr. Brown noted that Petitioner's sensory symptoms have "largely subsided" and she has "rare discomfort on the balls of her feet," with "minor" arm and hand symptoms and "occasional shooting pains in her legs." *Id.* Dr Brown's opinion was that the "cause [of] her neuropathy and the joint symptoms is not known with certainty. The appearance of symptoms of this kind after a flu or flu-like illness may be coincidental. However, immunization illnesses like neuropathy can occur." *Id.* at 2.

### III.    Parties' Arguments

Respondent argued that Petitioner has failed to establish a reasonable basis for her claim and is not eligible for an award of attorneys' fees and costs. Fees Resp. at 10. Citing the Federal Circuit's decision in *Perreira*, Respondent noted that in a reasonable basis inquiry, "the special master looks not at the likelihood of success, but instead assess the feasibility of the claim, and [P]etitioner must offer more than an unsupported assertion that a vaccine caused an injury." *Id.* at 8 (citing *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

Respondent argued that "petitioner's contention that the flu vaccine caused her alleged injury amounts to no more than 'the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Fees Resp. at 13. Respondent further argued that "no objective evidence supporting the required elements of Petitioner's claim" exists and she "routinely had no objective findings consistent with arthritis on exam, had normal neurological exams, and was noted to be 'essentially asymptomatic.'" *Id.* at 11-12.

Finally, Respondent argued that Petitioner's treating physician statements have "limited probative value" as the statements generally "fail to explain the reasoning behind any causal assessment, and instead appear to be based entirely on a perceived temporal connection and/or petitioner's own reported history." Fees Resp. at 13.

Petitioner replied to Respondent arguing that a reasonable basis did exist at the time the petition was filed. *See* Fees Reply. Petitioner pointed specifically to medical records from November 28, 2016, June 10, 2017, and October 2, 2017, where treating physician statements specifically linked Petitioner's injuries to her influenza vaccine. Fees Reply at 5. Petitioner argued that these records linking vaccination to injury were enough to provide reasonable basis for her claim. *Id.* at 6.

### IV.    Legal Standard

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted. Where compensation is denied, or a petition is dismissed, as it was in this case, the special master must determine whether the petition was brought in good faith and whether the claim had a reasonable basis. § 15(e)(1).

### A.    Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### B. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

The Federal Circuit has noted that determining what constitutes "more than a mere scintilla" is a "daunting task." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 15-1291V, 2021 U.S. Claims LEXIS 1437 at *13 (Fed. Cir. July 6, 2021). Citing the Fourth Circuit's ruling in *Sedar v. Reston Town Ctr. Prop., LLC*, the Federal Circuit has characterized "more than a mere scintilla" as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham*, 2021 U.S. Claims LEXIS 1437 at *13, *citing Sedar v. Reston Town Ctr. Prop., LLC* (988 F.3d 756, 761 n.3 (4th Cir. 2021); *see also Kurtz v. Fels*, 63 Wash. 2d 871, 878 (Wash. 1964) (holding that proof beyond a mere scintilla requires "facts to be assessed by the senses" and something "tactile" rather than calculations); *Gibson v. Epting*, 426 S.C. 346,

7

352 (S.C. 2019) (describing scintilla as a "perceptible amount" and "not something conjured up by the shadows.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). A Petitioner need not provide medical or expert opinion on causation to show reasonable basis for her claim. *Cottingham*, 2021 U.S. Claims LEXIS 1437 at *19. While a Special Master may consider the absence of relevant medical opinion as a factor in determining whether a claim had reasonable basis, such absence is not dispositive of the issue. *Id.* at *16.

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

### C. Attorneys' Fees and Costs

The Vaccine Act permits reimbursement of "reasonable" attorneys' fees and costs. § 15(e)(1). Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991). The Federal Circuit has endorsed the use of the lodestar approach, in which a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court may then make an upward or downward departure from the initial calculation based on other specific findings. *Id*. at 1348. Although not explicitly stated in the statute, attorneys' costs are also subject

to a reasonableness requirement. *See Perreira*, 27 Fed. Cl. 29 at 34.

Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cl. 1993).

V.   **Discussion**

A.  **Good Faith**

Petitioner is entitled to a presumption of good faith. *See Grice*, 36 Fed. Cl. 114 at 121. Respondent has not represented that they are contesting good faith in this matter. *See generally* Fees Resp. Based on my own review of the case, I find that Petitioner acted in good faith when filing this petition.

B.  **Reasonable Basis**

In her petition, Petitioner alleges that she suffered from arthritis and neurological injuries as a result of the influenza vaccine she received on October 10, 2016. After careful consideration of the relevant evidence, I find that Petitioner has provided some evidence to support reasonable basis in this case.

First, several of Petitioner's treating physicians linked her symptoms of pain, numbness, aching, and stiffness to her October 10, 2016 flu vaccine. Dr. Chesner (a rheumatologist) noted "pt s/p influenza vaccine – followed by symmetrical pain / stiffness hands/ wrists – feet and ankles – SI joints – likely reaction to flu vaccine or viral syndrome, post reactive arthritis – will manage with meloxicam 15mg one daily with gabapentin." Ex. 3 at 19-20. The notes further indicate that Dr. Chesner "[d]iscussed the probability [with Petitioner] that this is likely related to the vaccine." *Id.* at 18. In addition to Dr. Chesner, Dr. Brown noted that "her history suggests an inflammatory process affecting nerves, muscles and/or joints that came on after a flu shot." Ex. 4 at 6. Dr. Brown further opined that Petitioner "had an inflammatory reaction after the immunization. *Id.* at 5.

Second, the medical records establish that Petitioner experienced these symptoms for more than six months following vaccination. On June 5, 2017, Dr. Brown (a neurologist) noted that Petitioner's numbness, pain, and aching has "subsided over the last few months, but there is still arm and shoulder pain. She now has mild tingling in her arms and her fingers feel stiff." Ex. 4 at 5. The medical records from July 29, 2017 indicate: "Paresthesias ongoing burning sensation since flu vaccine last year." Ex. 2 at 3. On October 2, 2017, Dr. Brown opined that "[a]n autoimmune mechanism" likely caused Petitioner's "mild but bothersome sensory neuropathy after an influenza" vaccination and stated that "her improving symptoms and the favorable neurologic examination indicated that the neuropathy is slowly resolving." Ex. 4 at 3.

9

The standard that Petitioner must meet to establish reasonable basis is considerably lower than that required to prove causation under *Althen*. Petitioner need only provide "more than a mere scintilla" of evidence that her vaccination caused her injury. *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 15-1291V, 2021 U.S. Claims LEXIS 1437 at *13 (Fed. Cir. July 6, 2021). In this case, although a diagnosis is unclear, Petitioner's treating physicians have opined that she suffers from arthritis and/or "sensory neuropathy." Ex. 3 at 19, Ex. 4 at 2-3. These diagnoses are consistent with the injuries Petitioner alleged in her petition. Petitioner's medical records include statements from her treating physicians articulating a link between her flu vaccination and her subsequent symptoms of pain, numbness, aching, and stiffness. The medical records document that these symptoms persisted for more than six months. Accordingly, Petitioner has established a reasonable basis supporting her claim and is entitled to an award of attorneys' fees and costs.

## VI.     Final Attorneys' Fees

Petitioner requests a total of $16,979.50 in final attorneys' fees. Fees App, Ex. A at 15.

### A. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorney's experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[8]

Petitioner requests the following hourly rates for the attorney and paralegals who have worked on this matter to date:

---

[8] The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.
The 2020 Fee Schedule can be accessed at: http://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

| Name | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|
| Amy Senerth | - | $233.00 | $250.00 | $275.00 |
| Max Muller | - | $317.00 | $325.00 | $350.00 |
| Law Clerk | - | - | - | $125.00 |
| Paralegal | $125.00 | $140.00 | $140.00 | $140.00 |
| Paralegal/RN | $165.00 | - | - | - |

These rates are consistent with *McCulloh* and what these attorneys have been awarded in the past. *See Hock v. Sec'y of Health & Hum. Servs.*, No. 17-168V, 2021 U.S. Claims LEXIS 768 (Fed. Cl. Spec. Mstr. April 8, 2021); *see also Hlad v. Sec'y of Health & Hum. Servs.*, No. 17-1818V, 2020 U.S. Claims LEXIS 1096 (Fed. Cl. Spec. Mstr. June 22, 2020). Accordingly, I award the requested rates in full.

### B. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [are] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Petitioner's counsel has provided a breakdown of hours billed and costs incurred. Fees App., Ex. 1. I have reviewed these hours and find that a small reduction is appropriate for items such as scanning documents[9], reviewing invoices,[10] reviewing CM/ECF notifications,[11] preparing

---

[9] *See* entries on 11/17/2017 and 7/24/2018.

[10] *See* entries on 11/7/2017 (two entries) and 1/30/2018.

[11] *See* entries on 7/30/2018, 7/31/208, 8/30/2018 (two entries), 10/29/2018, 10/30/2018, 12/20/201, 12/21/2018, 12/27/2018, 2/26/2019 (two entries), 227/2019 (two entries), 4/25/2019, 4/26/2018 (two entries), 7/10/2019, 7/17/2019, 9/20/2019, 10/4/2019, 12/3/2019, 1/6/2020, 2/4/2020, 3/5/2020, 4/7/2020, 5/7/2020, 5/12/2020, 5/27/2020, 6/29/2020, and 7/30/2020.

documents to file with the court,[12] and internal communications.[13]

In making reductions to an attorney's fee application, a line-by-line evaluation of the fee application is not required. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). Special Masters may rely on their experience to determine the reasonable number of hours expended. *Id.* Accordingly, I will reduce Petitioner's requested fees by **5%** for a total award of **$16,130.52** ($16,979.50 - $848.98).

**C. Reasonable Costs**

Petitioner requests a total of $4,828.74 in costs, including expert fees, medical records, and the court's filing fee.

1. *Dr. Gershwin's Expert Fees*

Petitioner requests $4,125.00 for work performed by Dr. Eric Gershwin. Fees App, Ex. B at 20. Petitioner requests Dr. Gershwin be compensated at a rate of $500.00 per hour. Dr. Gershwin has previously been awarded his requested rate and I see no reason to disturb such a request. *See A.S. v. Sec'y of Health & Hum. Servs.*, No. 15-520V, 2020 U.S. Claims LEXIS 1196 (Fed. Cl. Spec. Mstr. June 4, 2020); *Hoskins v. Sec'y of Health & Hum. Servs.,* 2017 U.S. Claims LEXIS 934 (Fed. Cl. Spec. Mstr. July 12, 2017). Dr. Gershwin spent a total of 8.25 hours reviewing medical records and producing an expert report in this case. I find this to be reasonable and accordingly award Dr. Gershwin's expert fees in full.[14]

2. *Petitioner's Miscellaneous Costs*

Petitioner requests $703.74 for miscellaneous costs, including the cost of obtaining medical records and the court's filing fee. I have reviewed the supporting documentation and find these costs to be reasonable. Accordingly, I award them in full.

Total costs to be awarded: **$4,828.74.**

---

[12] *See e.g.*, entries on 8/30/2018, 1/31/2019, 2/1/2019, 7/24/2019, 9/12/2019, 9/23/2019, 2/7/2020, 2/18/2020 (two entries), 7/29/2020, 8/24/2020, and 8/27/2020.

[13] *See, e.g.*, entries on 7/23/2018 (two entries), 8/30/2018, 9/5/2018, 1/3/2019, 1/31/2019, 7/10/2019, 7/12/2019 (two entries), 7/15/2019, 7/24/2019, 9/12/2019, 9/23/2019, 12/3/2019, 1/6/2020, 1/28/2020 (two entries), 2/4/2020, 2/17/2020, 3/5/2020, 4/6/2020, 5/6/2020, 5/27/2020, 6/29/2020, 7/29/2020 (two entries), 8/24/2020 (two entries) and 8/28/2020.

[14] While I encourage experts to provide Petitioners with their candid opinions, even when contrary to Petitioner's theory of the case, in this case, Dr. Gershwin's report was unhelpful to the point that it was not a factor in my reasonable basis analysis. Although I will not deduct Dr. Gershwin's fees in this instance, in the future, counsel should ensure that expert reports filed in support of a petition at a minimum address the three *Althen* prongs.

### VII.     Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$20,959.26**, representing reimbursement of Petitioner's final attorneys' fees and costs in the form of a check jointly payable to Petitioner and her attorney, Ms. Amy Senerth.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with this decision.[15]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.